# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3576

_____

Brent Ballinger

*Plaintiff - Appellant*

v.

Cedar County, Missouri; David Starbuck; John and Jane Does

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 21, 2015
Filed: January 14, 2016

_____

Before RILEY, Chief Judge, BYE and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Brent Ballinger was serving an eight-year sentence in a Missouri Department of Corrections (DOC) prison when a Missouri state court judge granted Ballinger's motion to vacate and set aside his conviction and sentence. The state court judge ordered that Ballinger be remanded to the custody of the Cedar County Sheriff's Department. While awaiting transfer, Ballinger was placed in administrative segregation, where, he contends, he spent approximately one year. Ballinger sued

Cedar County, the county sheriff, and several unnamed DOC employees, alleging a deprivation of his constitutional rights. The district court granted the sheriff's and the county's motion and dismissed Ballinger's lawsuit for failure to state a claim.[1] Having jurisdiction pursuant to 28 U.S.C. § 1291, we now affirm in part and reverse in part.

## I.    BACKGROUND[2]

On January 23, 2009, a jury convicted Ballinger of three felonies in Missouri state court. See State v. Ballinger, 298 S.W.3d 572, 573 (Mo. Ct. App. 2009). He was sentenced to eight years. On September 15, 2010, Ballinger filed in the Circuit Court of Cedar County, Missouri, a motion to vacate, set aside, or correct his conviction and sentence under Missouri Supreme Court Rule 29.15, alleging he received ineffective assistance of counsel at trial. On December 8, 2010, a state court judge granted Ballinger's motion, ordering Ballinger's judgment and sentence "vacated and set aside." The state court judge ordered that Ballinger "be remanded to the custody of the Cedar County Sheriff's Department for further proceedings in [his] underlying case." The state appealed. On November 15, 2011, the Missouri

---

[1]Cedar County and Sheriff David Starbuck's motion to dismiss did not include the John and Jane Does, yet the district court included the John and Jane Does with Cedar County and Sheriff Starbuck when granting their motion and dismissing all of Ballinger's claims. Ballinger never served the John and Jane Does and has not pursued the Doe claims in the district court or on appeal. We, therefore, consider any claims against the John and Jane Does abandoned. However, the John and Jane Does should not have been included in the district court's order dismissing Ballinger's claims because the Does were never before the district court. Accordingly, we reverse and remand to dismiss those claims without prejudice. See Fed. R. Civ. P. 4(m).

[2]"'[W]e recite the facts as alleged in the complaint, viewing them in the light most favorable to the plaintiff[.]'" Henley v. Brown, 686 F.3d 634, 636 n.1 (8th Cir. 2012) (alteration in original) (quoting Davenport v. Farmers Ins. Grp., 378 F.3d 839, 841 (8th Cir. 2004)).

Court of Appeals affirmed the order, and later the state's motion for rehearing and transfer to the Missouri Supreme Court was denied.

Shortly after the state court judge first set aside Ballinger's conviction, the DOC, "per [the] court ruling overturning his sentence," assigned Ballinger to administrative segregation, which Ballinger refers to as "solitary confinement" and "the hole." Ballinger requested a classification hearing to find out how long he would be kept in solitary confinement. At a hearing on January 27, 2011, a DOC classification committee recommended Ballinger remain in administrative segregation until March 24, 2011, "[p]ending . . . transfer by County." Ballinger alleges in his complaint he was kept in solitary confinement for at least one year.[3]

Ballinger filed this claim pursuant to 42 U.S.C. §§ 1983 and 1988 against Cedar County Sheriff David Starbuck and DOC employees, who have been designated as John and Jane Does (collectively, defendants),[4] alleging constitutional violations.[5] Asserting he became a pretrial detainee when his conviction was overturned, Ballinger alleges that the defendants violated his Fourteenth Amendment due process rights by leaving him in administrative segregation. Ballinger maintains

---

[3]Ballinger claims the DOC classification committee held additional hearings but nonetheless decided Ballinger should remain in solitary confinement. During oral argument, Ballinger's counsel explained it was "a little unclear as to exactly how long" Ballinger spent in solitary confinement, but it was his allegation he was there for approximately one year.

[4]During oral argument Ballinger's counsel explained he requested the names of the employees on the DOC classification committee, but the DOC did not provide them.

[5]Ballinger originally brought claims under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution but does not argue his Fourth and Eighth Amendment claims, so we consider them waived. See Chavero-Linares v. Smith, 782 F.3d 1038, 1040 (8th Cir. 2015).

Sheriff Starbuck, who knew or should have known Ballinger would remain in solitary confinement unless transferred, "purposely and maliciously refused to allow" Cedar County employees to pick him up and take him to the Cedar County jail. Ballinger asserts Cedar County, through its policy maker Sheriff Starbuck, maintained policies that were deliberately indifferent to his Fourteenth Amendment rights.

Sheriff Starbuck and Cedar County moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Sheriff Starbuck and Cedar County argued Ballinger was still a prisoner and did not suffer a significant or atypical hardship, as required when an inmate makes a due process challenge. The district court granted the motion to dismiss. Ballinger appeals.

## II.  DISCUSSION

### A.  Standard of Review

"'Whether a complaint states a cause of action is a question of law which we review on appeal de novo.'" Packard v. Darveau, 759 F.3d 897, 900 (8th Cir. 2014) (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 936 (8th Cir. 2012)). "To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" Northstar Indus., Inc. v. Merrill Lynch & Co., 576 F.3d 827, 832 (8th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### B.  Ballinger's Legal Status: Prisoner or Pretrial Detainee

Prisoners' and pretrial detainees' constitutional claims are analyzed under different standards. See Morris v. Zefferi, 601 F.3d 805, 809 (8th Cir. 2010). Generally, while a pretrial detainee is presumed innocent and may not be punished, see Bell v. Wolfish, 441 U.S. 520, 535 (1979); Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996), a prisoner must demonstrate he has suffered "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" to establish a claim

under the Fourteenth Amendment Due Process clause, <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). Because the applicable constitutional standard depends on whether Ballinger was a prisoner or a pretrial detainee during the time relevant to his claims, we first must determine his legal status.

Ballinger argues he became a pretrial detainee when his conviction was overturned and the defendants punished him by keeping him in solitary confinement. The district court decided Ballinger was still a prisoner. The district court relied on Missouri Supreme Court Rule 30.17, a rule of appellate criminal procedure that establishes what happens to a defendant when the state appeals a postconviction order. The rule states:

> If an appeal is taken by the state, such appeal *shall not stay* the operation of an order or judgment in favor of the defendant. . . . This Rule 30.17 *shall not apply* to an appeal taken by the state from an order entered in a proceeding under . . . *Rule 29.15*, but in such case, if the defendant is in custody, he shall remain in custody during the pendency of the appeal.

Mo. Sup. Ct. R. 30.17 (emphasis added). The district court determined, because Ballinger's conviction was overturned pursuant to Rule 29.15 and the state appealed while Ballinger was in custody, "under Rule 30.17, [Ballinger] was to remain in custody while the state's appeal was pending."

Ballinger argues Rule 30.17 is not dispositive because it is silent as to the legal status of the defendant—"*only* requir[ing] that he remain in custody." Analogizing to a successful habeas petition, Ballinger asserts there is no reason he should be "entitled to any less status than a person that has had [his] murder conviction overturned as the result of a habeas proceeding." Ballinger offers two Missouri habeas cases in support of his position. In both <u>Ferguson v. Dormire</u>, 413 S.W.3d 40, 73 n.51 (Mo. Ct. App. 2013), and <u>State ex rel. Koster v. Green</u>, 388 S.W.3d 603, 605

n.2 (Mo. Ct. App. 2012), the Missouri Court of Appeals ruled when a prisoner's conviction is vacated through habeas relief, the prisoner's legal status returns to the status of a pretrial detainee.

Though these habeas cases do suggest a prisoner may in some circumstances regain pretrial detainee status, neither of the convictions in Green or Ferguson were vacated pursuant to Rule 29.15. See Ferguson, 413 S.W.3d at 73; Green, 388 S.W.3d at 605. As the district court noted, this is a critical distinction because Rule 30.17 expressly does not apply when the state appeals an order entered under Rule 29.15. Further, the state cannot appeal from a grant of a writ of habeas corpus, see Ferguson, 413 S.W.3d at 50 (noting that when a Missouri circuit court grants a petition for a writ of habeas corpus, the state's "only recourse is to seek review by filing a petition for writ of certiorari"), so it appears Rule 30.17 would not apply to Green or Ferguson at all.

Unlike habeas, Rule 29.15(k) authorizes the state to appeal an order sustaining or overruling a motion filed under the rule. Rule 30.17 states, "If an appeal is taken by the state, such appeal shall not stay the operation of an order or judgment in favor of the defendant. . . . This Rule 30.17 shall not apply to an appeal taken by the state from an order entered in a proceeding under . . . Rule 29.15." We read the rule's exception plainly to provide that an appeal by the state from an order under Rule 29.15 *does* stay the operation of the order. Here, the state court judge vacated Ballinger's judgment and sentence in an order entered in a proceeding under Rule 29.15, and the state appealed. Because the order was stayed by the appeal and Ballinger's conviction and sentence were not in fact vacated, he remained a prisoner while the appeal was pending and did not regain the status of a pretrial detainee. See Crane v. Logli, 992 F.2d 136, 139 (7th Cir. 1993) ("Bell does not require us to hold that [the plaintiff] became a pretrial detainee, in a constitutional sense, once his conviction was reversed."); cf. Tourscher v. McCullough, 184 F.3d 236, 241-42 (3d Cir. 1999) (concluding the intermediate reversal of a conviction did not take

immediate effect and was not final under applicable state law until a petition for further review was acted upon and the automatic stay on that reversal expired).

### C. Ballinger's Due Process Claims

Ballinger alleges the defendants were deliberately indifferent to his due process rights under the Fourteenth Amendment by keeping him in solitary confinement for approximately one year. While in solitary confinement, Ballinger declares he experienced different conditions than inmates in the general population, including "[c]omplete isolation from the general population" and limited access to showers, social interaction, a telephone, and exercise. As a result of extended solitary confinement, Ballinger claims he "has been diagnosed with Post-Traumatic Stress Disorder" and "has suffered emotional distress."

"[T]o prevail on a Fourteenth Amendment due process claim, [Ballinger] must first demonstrate that he was deprived of life, liberty or property by government action." Phillips v. Norris, 320 F.3d 844, 846 (8th Cir. 2003). Because we agree with the district court that Ballinger remained a prisoner while he was in solitary confinement, Ballinger "must identify conditions that impose 'atypical or significant hardship . . . in relation to the ordinary incidents of prison life'" to establish his deprivation of liberty claims under the Fourteenth Amendment. Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) (alteration in original) (quoting Sandin, 515 U.S. at 484).

The district court found Ballinger failed to plead how "being placed in solitary confinement was an atypical and significant hardship such that his due process rights were violated," and denied Ballinger's request to amend his complaint, stating doing so "would be futile." Notably, the district court considered Ballinger's time spent in solitary confinement as "approximately three months." While Ballinger pled he was in solitary confinement continuously from sometime in late December 2010 "until at least March 24, 2011," he later stated he "remained in the hole for at least one year."

-7-

On appeal from a Rule 12(b)(6) dismissal, we assume Ballinger's factual allegations are true. See Northstar, 576 F.3d at 832. Therefore, we assume Ballinger spent approximately one year in administrative segregation.

But any error the district court made by failing to consider the greater length of time Ballinger alleges he was kept in solitary confinement does not change the result. "'We have consistently held that a demotion to [administrative] segregation, even without cause, is not itself an atypical and significant hardship.'" Orr, 610 F.3d at 1034 (quoting Phillips, 320 F.3d at 847) (deciding a prisoner was not deprived of a liberty interest during a nine-month stay in administrative segregation); accord Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) (repeating "administrative and disciplinary segregation are not atypical and significant hardships under Sandin").

There is "no liberty interest in avoiding administrative segregation unless the conditions of . . . confinement 'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" Wycoff v. Nichols, 94 F.3d 1187, 1190 (8th Cir. 1996) (quoting Sandin, 515 U.S. at 486). The conditions Ballinger experienced in solitary confinement were not materially different from other cases in which we have declined to find a liberty interest. Cf. Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir. 1996) (declaring a "transfer from administrative segregation to punitive isolation was not 'a dramatic departure from the basic conditions' of [a prisoner's] confinement") (quoting Sandin, 515 U.S. at 486)); Rahman X v. Morgan, 300 F.3d 970, 973-74 (8th Cir. 2002) (reasoning that although a twenty-six-month assignment to a segregation cell "was substantial, [the defendant] was not subject to the hardships that prisoners placed in that ward for punitive reasons face" and "was given sufficient process by the prison officials"). As a prisoner, Ballinger has not sufficiently alleged he was deprived of a liberty interest under the Fourteenth Amendment Due Process clause.

-8-

## III. CONCLUSION

We affirm the district court's dismissal of Ballinger's claims against Cedar County and Sheriff Starbuck. We reverse the district court in part and remand with instructions to dismiss without prejudice Ballinger's claims against the John and Jane Does.

_____